1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

8  UNITED STATES OF AMERICA,

9      Plaintiff,                        NO.  CR-05-126-RHW-11

10     v.

11  ASCENCION ALVEREZ-TEJADA,            **ORDER GRANTING**
                                         **DEFENDANT'S MOTION TO**
12     Defendant.                        **SUPPRESS**

13

14         Before the Court are Defendant's Motion to Dismiss Case or to Suppress

15  (Ct. Rec. 616); Defendant's Motion to Dismiss (Ct. Rec. 696); and Defendant's

16  Motion to Suppress Evidence (Ct. Rec. 699).  Hearings on the motions were held

17  on March 8 and 13, 2006.  Defendant was present and represented by James Egan.

18  The Government was represented by Assistant United States Attorney Russell

19  Smoot.

20         Defendant is charged with Conspiracy to Distribute 5 Kilograms or More of

21  a Mixture or Substance Containing a Detectable Amount of Cocaine and 500

22  Grams or More of a Mixture or Substance Containing a Detectable Amount of

23  Methamphetamine, Use of a Communication Facility to Facilitate a Title 21 Drug

24  Felony Offense, and Criminal Forfeiture.  Defendant seeks to have the Indictment

25  dismissed, or in the alternative, suppress the evidence that was found in a black

26  Ford Focus, which was "administratively seized" by DEA agents and subsequently

27  searched pursuant to a search warrant.

28         This case involves the search and seizure of a car and its occupants without a

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 1**

1  warrant.  Defendant contends that the manner of the execution of the search and

2  seizure was unreasonable in the constitutional sense.

3      The Fourth Amendment to the Constitution protects people from

4  "unreasonable" searches and seizures by the Government.  U.S. Const. amend IV.

5  Ordinarily, the Fourth Amendment requires that a warrant be issued by a court

6  before a search or seizure can be made.  *Johnson v. United States*, 333 U.S. 10, 13-

7  14 (1948).  The courts and Congress enacted Rule 41 of the Federal Rules of

8  Criminal Procedure to govern the issuance of warrants by the courts and the

9  execution of warrants by law enforcement.  Generally, searches and seizures that

10  are executed in conformance with Rule 41 are considered reasonable.  *United*

11  *States v. Martinez-Garcia*, 397 F.3d 1205 (9th Cir. 2005)

12      The courts have, by decision, carved out exceptions to the Constitution's

13  warrant requirement.  *Railway Labor Executives' Ass'n v. Burnley*, 839 F.2d 575,

14  583 n. 11 (1988) *rev'd on other grounds, Skinner v. Railway Labor Executives'*

15  *Ass'n*, 489 U.S. 602 (1989) (listing well-defined exceptions to the search warrant

16  requirement).  Usually these exceptions have involved situations where law

17  enforcement is faced with exigent circumstances that make seeking a warrant

18  impracticable.  One of the recognized exceptions is the search of a car.  *Carroll v.*

19  *United States*, 267 U.S. 132 (1925).  Rule 41 by its terms does not apply to

20  searches of a car.  No court, however, has said that the judicially created freedom

21  from the warrant requirement permits the Government to conduct a warrantless

22  search or seizure in an unreasonable manner.  The Court concludes that the test for

23  judging the execution of the warrantless search and seizure is its reasonableness.

24  *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990).   The term "unreasonable" is not

25  defined in the Constitution.  *South Dakota v. Opperman*, 428 U.S. 364, 381 (1976).

26  In the absence of a criminal rule governing the execution of warrantless searches

27  and seizures, the Court must determine the contours of reasonableness.  The facts

28  of the case found by the Court below are judged by this standard.

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 2**

### BACKGROUND FACTS

On December 18, 2004, at approximately 6:00 p.m., Defendant and his passenger, Diana Maria Volerio-Perez, were traveling in a black Ford Focus, heading north on Highway 97 near La Pine, Oregon. As they pulled up to the intersection of U.S. Highway 97 and Veteran's Way in Redmond, Oregon, a disabled car was stopped at the intersection. Defendant stopped his car behind the disabled car. While they were waiting, a truck with Minnesota license plates ran into the back of their car. Defendant got out of the car to see if there was any damage. Within minutes, a marked patrol car arrived at the scene, driven by Deschutes County Sheriff's Department Deputy Robert Short. Sergeant Short told Defendant that he suspected the driver of the truck to be drunk and that Defendant needed to drive his car to a parking lot adjacent to a nearby restaurant. Once at the parking lot, another officer, Jeff Pullig, ordered Defendant and Ms. Volerio-Perez out of the car, but did not permit Defendant to turn off the car, or take the keys. Defendant was required to show his driver's license, proof of insurance, and the registration to the deputy. Ms. Volerio-Perez also had to show her driver's licence. After she provided her driver's license, she attempted to get back into the car because she had left her purse in the car. She was told by Sergeant Short that she was not allowed to get back into the car.

Defendant and Ms. Volerio-Perez were then directed to get into the marked patrol car. Prior to getting into the patrol car, they were both searched. Ms. Volerio-Perez was asked to pull her sweater to her chin while the police patted her down. While Defendant and Ms. Volerio-Perez were in the back seat of the Deschutes County Sheriff patrol car, Officer Pullig came to the side of the patrol car and asked if anyone was in the car with them. They replied no one. At that point, Officer Pullig opened the car door so they could get out and see that someone was driving the black Ford Focus away from the scene at a high rate of speed. Officer Pullig ordered Defendant and Ms. Volerio-Perez out from the patrol

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 3**

1  car, jumped into the car, turned on the overhead flashing lights and siren, and

2  proceeded to chase the black Ford Focus north on Highway 97.

3      Minutes passed.  Defendant and Ms. Volerio-Perez were told that this was

4  the third similar auto theft in Deschutes County in the last month.  While they were

5  standing in the parking lot, the black Ford Focus sped by going south on Highway

6  97 with the patrol car in pursuit.  After approximately 20-25 minutes, Officer

7  Pullig returned to the parking lot and told Defendant and Ms. Volerio-Perez that he

8  could not catch the person who stole their car.  Officer Pullig also handed Ms.

9  Volerio-Perez her purse and Defendant a cell phone that was in the black Ford

10  Focus.  He explained that the person who stole their car threw these items out the

11  window.  Emotionally upset about the turmoil and events, Ms. Volerio-Perez

12  became sick to her stomach and had to use the restaurant's restroom.  Eventually,

13  Sergeant Short gave Defendant and Ms. Volerio-Perez a ride to a nearby motel,

14  where they spent the night and had friends come and pick them up the next day.

15     The someone who "hit" Defendant's car from behind was Drug Enforcement

16  Administration (DEA) Special Agent Tom Sullivan.  The someone who "stole" the

17  black Ford Focus was DEA Special Agent Sean Cummings.  Officer Pullig was

18  really DEA Special Agent Jeff Pullig.  The staged accident and the theft of the car

19  were all part of the administrative seizure of the black Ford Focus, which the DEA

20  agents believed they had statutory authority to seize because the black Ford Focus

21  had been used months earlier to facilitate the transportation of controlled

22  substances, and because the DEA agents believed the black Ford Focus was, at the

23  time of the seizure, being used to transport methamphetamine and cocaine.  On the

24  evening of December 18, 2004, prior to executing the plan, Sergeant Short spoke

25  with Stephen Gunnels, a Deschutes County prosecutor who is also cross-deputized

26  as a Special Assistant United States Attorney (SAUSA).  Sergeant Short wanted to

27  obtain Mr. Gunnels' legal opinion regarding the stop.  Mr. Gunnels was not asked

28  to authorize the plan; rather, he was asked if it was lawful to seize the drugs under

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 4**

these circumstances.  Mr. Gunnels concluded they had legal authority to seize the vehicle.

The backdrop of the "administrative seizure" unfolded in the Fall of 2004, when DEA agents began to piece together evidence that a drug distribution ring was operating in the Eastern Washington area, which was collectively referred to as the "Robert Lopez organization."  As part of the investigation, in September and November, 2004, DEA agents conducted two controlled buys of drugs.  In each instance, the black Ford Focus was used to either transport the drugs, or the transaction was conducted inside the vehicle.  Neither the Defendant nor his passenger were involved in these transactions.

As part of the investigation into the Robert Lopez organization, DEA agents obtained wiretap authorization in November, 2004.  As a result of the wiretap, DEA agents intercepted a series of conversations that indicated that someone in a black Ford Focus would be transporting methamphetamine and cocaine from Los Angeles, California, to the Eastern Washington area.  DEA agents were able to surveille a black Ford Focus traveling from Kennewick, Washington, to Los Angeles, California.  Based on information gained from the intercepted conversations, DEA agents were able to ascertain with precision the black Ford Focus' departure from Los Angeles, California, and the subsequent rendevous point of the black Ford Focus near La Pine, Oregon.

As the car traveled toward La Pine, Oregon, DEA agents decided that they should administratively seize the Ford Focus, but wanted to do so without letting the driver of the black Ford Focus know they were seizing the car.  They believed that the black Ford Focus was subject to administrative forfeiture as a result of the controlled buys in September and November and because they had probable cause to believe that the car was transporting controlled substances.  To accomplish this, the agents brain-stormed and came up with two plans.  The first plan would be to car-jack the car while Defendant was stopped at a gas station.  The second plan

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 5**

would be to have an unmarked car stall at an intersection. As the Ford Focus approached the intersection behind the stalled car, another DEA agent, posing as a drunk driver, would run into the Ford Focus from behind. Once the driver and passenger of the Ford Focus were separated from their vehicle, a DEA agent would jump into the car and drive away. For some reason, the second plan sounded better, and the DEA agents elicited the help of the Deschutes County Sheriff's Office to execute the plan.

As set forth above, the ruse unfolded according to plan. After DEA agent Sean Cummings "administratively seized" the car, he drove it to the Deschutes County Sheriff's Office impound lot where it was stored for the night. The next day, Agent Cummings drove the black Ford Focus to Spokane, where DEA agents obtained a search warrant based on the intercepted telephone calls. The affidavit in support of the search warrant was silent regarding the controlled buys or the manner in which the black Ford Focus was "administratively seized." Approximately two (2) kilograms of suspected cocaine and approximately three (3) pounds of methamphetamine were located in a compartment in the black Ford Focus.

### DISCUSSION

Defendant seeks to have the Indictment dismissed, or, in the alternative, have the evidence suppressed on a number of grounds. First, Defendant argues that the Indictment should be dismissed because the police actions were outrageous. Second, Defendant argues that the execution of the search and seizure was unreasonable and the evidence obtained should be suppressed. Defendant also argues that the execution of the search warrant was in violation of Federal Rules of Criminal Procedure 41 and the evidence seized should be suppressed. Finally, Defendant asserts that the vehicle stop resulted in the illegal seizure of Defendant.

The Government argues that the black Ford Focus was used to facilitate the distribution and transportation of cocaine and methamphetamine and was subject to

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 6**

administrative forfeiture.  Moreover, while the methods of administratively seizing the black Ford Focus were unusual, creative, and out-of-the ordinary, the seizure of the vehicle was supported by law and executed in a reasonable manner.

In analyzing whether the statute provides authority to administratively seize the black Ford Focus, it is important to remember that there are three distinct events that could support the seizure and subsequent search of the vehicle: (1) the controlled buys of September and November, 2004; (2) the information known as of the morning of December 18, 2004; and (3) the issuance of the search warrant. Each of these events must be reviewed as separate events in determining whether the agents' actions were reasonable.

**A.    Forfeiture Statute**

Section 881(a)(4) of Title 21 of the United States Code provides that an automobile which is used to facilitate a narcotics transaction is subject to forfeiture to the United States.[1]   Section 881(b), in turn, provides that "[a]ny property subject to forfeiture to the United States . . . may be seized . . . in the manner set forth in section 981(b) of Title 18."  21 U.S.C. § 881(b).  Section 981(b)(2) of Title 18 provides that authorized seizures must be made pursuant to a warrant obtained in

---

[1]Section 881(a) provides in pertinent part as follows:

(a) Subject Property

The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter . . .

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1).

21 U.S.C. § 881(a).

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 7**

the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure, except that a warrantless seizure may be made if there is probable cause to believe that the property is subject to forfeiture and the seizure is made pursuant to a lawful arrest or search or another exception to the Fourth Amendment warrant requirement would apply.  18 U.S.C. § 981(b)(2).  Thus, the statutes contemplate two discrete events: the forfeiture of the property and the seizure of the property.

### (1)    Forfeiture

A forfeiture occurs at the time of the unlawful act.  21 U.S.C. § 881(h)[2]; *United States v. Walker*, 900 F.2d 1201, 1204 (8th Cir. 1990).  Here, the black Ford Focus was subject to forfeiture based on the controlled purchase that took place in September, 2004.  Pursuant to section 881(h), the black Ford Focus was forfeited to the Government when the controlled buy took place and all rights, title, and interest in the car vested in the Government in September, 2004.  Even if the controlled buys had not taken place, the black Ford Focus would be subject to forfeiture on December 18, 2004, because the vehicle was transporting controlled substances.

### (2)    Seizure

Section 881(b)(2) requires that a warrant be obtained prior to seizing the forfeited property, unless one of the exceptions to the warrant requirement provided in the statute applies.  The Government argues that the warrantless seizure of the black Ford Focus was permitted under the statute because there was probable cause to believe the car was subject to forfeiture, and the automobile exception to the Fourth Amendment applied.  The Court agrees.

---

[2]Section 881(h) provides:

All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section.  21 U.S.C. § 881(h).

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 8**

1    **(a)    Probable Cause**

2    Whether probable cause exists to justify a warrantless seizure of an

3 automobile turns on whether, at the moment of the seizure, "the facts and

4 circumstances within the agent's knowledge and of which they had reasonably

5 trustworthy information were sufficient to warrant a prudent person in believing

6 that the defendant had committed or was committing an offense." *United States v.*

7 *Kimak*, 624 F.2d 903, 905 n.3 (9th Cir. 1980). A vehicle may be seized for

8 forfeiture even in the absence of probable cause to believe it contains contraband if

9 there is probable cause to believe that it was used "to facilitate the transfer of

10 contraband." *United States v. Johnson*, 572 F.2d 227, 234 (9th Cir. 1978).

11    The agents had probable cause to believe the car was subject to forfeiture,

12 based on the controlled buys and the intercepted phone calls that indicated the

13 black Ford Focus would be transporting controlled substances from California to

14 Washington. If the agents had sought a warrant to administratively seize the

15 vehicle in a manner contemplated by the statute, a magistrate would have

16 authorized a warrant.

17    (**b**)    **Automobile Exception**

18    The statute permits the warrantless seizure of the black Ford Focus if one of

19 the exceptions to the Fourth Amendment warrant requirement applies. The

20 automobile exception to the Fourth Amendment provides that "if a car is readily

21 mobile and probable cause exists to believe it contains contraband, the Fourth

22 Amendment . . . permits police to search the vehicle without more. *Maryland v.*

23 *Dyson*, 527 U.S. 465 (1999) (per curiam*) (quoting Pennsylvania v. Labron*, 518

24 U.S. 938 (1996) (per curiam)). The practical reality of the interplay between 18

25 U.S.C. § 981(b)(2) and the recognized automobile exception is that anytime federal

26 agents have probable cause to believe that an automobile was used, or is being

27 used, to facilitate the transportation or sale of controlled substances, they can seize

28

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 9**

1  the vehicle without first obtaining a warrant.[3]    The Court agrees with the

2  Government, then, that the agents were authorized to seize the vehicle without a

3  warrant.

4      **(3)    Execution of the Seizure**

5     In passing the Civil Asset Forfeiture Reform Act of 2001, Congress

6  intended to provide a more just and uniform procedure by creating general rules

7  designed to increase the due process safeguards for property owners whose

8  property has been seized.  H.R. Rep. No. 106-192 (1999).  Even so, section 981is

9  silent with regard to how agents should execute a warrantless seizure of forfeited

10  property.  Section 981(b)(2) only provides that seizures must be made pursuant to a

11  warrant obtained in the same manner as provided for a search warrant under the

12  Federal Rules of Criminal Procedure.  It does not state the execution of the warrant

13  or the seizure must conform to the Rules.

14     The Court is troubled by the unreasonable manner of execution and the lack

15  of due process that was afforded Defendant when the agents "seized" the black

16  Ford Focus that he was driving.  First, the agents had statutory authority to seize

17  the car in September, 2004, yet they waited to execute the search until some

18  months later when persons who were not connected with the prior controlled

19  purchases were using the forfeited vehicle.  Second, even if the agents had

20  statutory authority to seize the vehicle on December 18, 2004, the fact that they

21  failed to notify Defendant that his car was being seized is problematic.  Finally, no

22  Court passed on the extended delay in notification.  Even so, the Court cannot say

23  that the agents violated any one provision of the civil forfeiture statutes applicable

24  to this case as the statute is silent about notice and the timeliness of a warrantless

---

25

26  [3]This interpretation of the statute is consistent with Fourth Amendment

27  jurisprudence.  In *Florida v. White*, 526 U.S. 559 (1999), the Supreme Court held

28  that a warrantless seizure of an automobile, pursuant to a state forfeiture statute,

does not violate the Fourth Amendment.  *Id.* at 565-66.

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 10**

1    seizure.  This does not end the Court's inquiry, however,  because the

2    "administrative seizure" must be reasonable in the Constitutional sense.

3    **C.    Fourth Amendment**

4         Searches for administrative purposes are governed by the Fourth

5    Amendment.  *Michigan v. Tyler*, 436 U.S. 499, 501 (1978); *see also Skinner v.*

6    *Railway Labor Executives' Ass'n*, 489 U.S. 602, 617 (1989) (holding that drug and

7    alcohol testing of railroad employees is governed by the Fourth Amendment); *New*

8    *York v. Burger*, 482 U.S. 691, 693 (1987) (finding that the Fourth Amendment

9    governs a warrantless search of an automobile junkyard); *New Jersey v. T.L.O.*,

10   469 U.S. 325, 333-36 (1985) (holding that the Fourth Amendment applies to

11   searches conducted by public school officials).  The Fourth Amendment protects

12   individuals from "unreasonable" searches of their persons, homes, and possessions.

13   U.S. Const. amend. IV.  "Wherever a man may be, he is entitled to know that he

14   will remain free from unreasonable searches and seizures."  *Katz v. United States*,

15   389 U.S. 347, 358 (1967).

16        A seizure that is lawful at its inception can violate the Fourth Amendment if

17   its manner of execution unreasonably infringes interests protected by the

18   Constitution.  *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).  "The Fourth

19   Amendment says nothing specific about formalities in exercising a warrant's

20   authorization, speaking to the manner of searching as well as to the legitimacy of

21   searching at all simply in terms of the right to be 'secure. . . against unreasonable

22   searches and seizures.'"  *United State v. Banks*, 540 U.S. 31, 35 (2003).

23        Generally, the execution of a search warrant is "left to the discretion of the

24   executing officers to determine the details of how best to proceed with the

25   performance of a search authorized by warrant–subject of course to the general

26   Fourth Amendment protection 'against unreasonable searches and seizures.'"

27   *Dalia v. United States*, 441 U.S. 238, 257 (1979); *see also Banks*, 540 U.S. at 35-

28   36 ("Although the notion of reasonable execution must therefore be fleshed out, we

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 11**

1    have done that case by case, largely avoiding categories and protocols for searches.

2    Instead, we have treated reasonableness as a function of the facts of cases so

3    various that no template is likely to produce sounder results than examining the

4    totality of circumstances in a given case; it is too hard to invent categories without

5    giving short shrift to details that turn out to be important in a given instance, and

6    without inflating marginal ones.").

7        Even where an exception to the warrant requirement applies, the

8    Government must execute searches and seizures in a reasonable manner. *Illinois v.*

9    *Rodriguez*, 497 U.S. 177, 186 (1990) ("It is apparent that in order to satisfy the

10   'reasonableness' requirement of the Fourth Amendment, what is generally

11   demanded of the many factual determinations that must regularly be made by

12   agents of the government–whether the magistrate issuing a warrant, the police

13   officer executing a warrant, or the police officer conducting a search or seizure

14   under one of the exceptions to the warrant requirement–is not that they always be

15   correct, but that they always be reasonable."). The permissibility of a particular

16   practice is judged by balancing its intrusion on the individual's Fourth Amendment

17   interests against its promotion of legitimate governmental interests. *Skinner*, 489

18   U.S. at 619.

19       In analyzing the reasonableness of the manner in which the execution of the

20   warrantless seizure was executed, it is important to remember that the agents could

21   not have executed the seizure in a manner that would not have met prior approval

22   of a magistrate. *United States v Johns*, 469 U.S. 478, 483 (1985) ("[T]he exception

23   to the warrant requirement recognized by *Carroll* allows a search of the same

24   scope as could be authorized by a magistrate."). Here, DEA agents executed the

25   warrantless seizure of the black Ford Focus, using a number of questionable

26   tactics: the use of a ruse; the use of force; failing to notify the driver of the vehicle

27   that they were administratively seizing the vehicle; and committing criminal acts.

28   The lens through which the Court views the agents' action asks whether a

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 12**

magistrate would have authorized the execution of the warrantless seizure in the manner in which it was executed and whether the seizure was reasonable.

### (1) Hiding the fact of the search and seizure (Covert search and seizure)

In this case, the agents executed a warrantless covert search and seizure. Although the Court was not able to uncover any authority that directly addresses the constitutionality of warrantless covert searches and seizures, it was able to gleam from other case law, statutes, and the Federal Rules of Criminal Procedure guidance as to whether the execution of the warrantless search and seizure was reasonable under the Fourth Amendment.

A search and seizure by law enforcement is almost always identifiable as such. Agents wear jackets that prominently display "Police" or some other law enforcement agency. Warrants are immediately produced to justify the action. *United States v. Gantt*, 194 F.3d 987, 1001 (9th Cir. 1999). Cars are normally stopped by uniformed police officers. Searches after stops appear to be what they are. Consequently, the legitimacy of the actions by law enforcement can be judged by the persons involved and those passing by. The public and the individual involved know that they must cooperate and not interfere. Moreover, the public can access the records of the court and review the justification for the search and the items seized.

The court guards the process by requiring that the warrant be left with the place and person involved and that an inventory be prepared and filed with the court. *See* Fed. R. Crim. P. 41(f). The hour of the search can be determined and limited by the Court to daytime hours. *See* Fed. R. Crim. P. 41(e)(2)(B). The court requires the search be conducted in a specified period of time to insure that the justification for the search does not become stale. *See* Fed. R. Crim. P. 41(e)(2)(A).

In *United States v. Johns*, 948 F.2d 599 (9th Cir. 1991), the court reviewed the issuance of a warrant that authorized the agents to delay giving notice after the

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 13**

search.  Like here, the notice of the execution of the warrant was delayed until the defendants were arrested.  *Id.* at 603.  The Ninth Circuit found that a magistrate could not authorize such a delay under Rule 41 and that suppression would normally be required.  *Id.* at 604.  Ultimately, the evidence was not suppressed because of the good faith exception.  *Id.* at 605.  The circuit relied on Rule 41 alone and avoided ruling on whether notice was required by the Constitution.  *Id.* at 604 n.2.  While Rule 41 may not apply to warrantless searches, the court's exclusion of evidence for its violation is instructive on the determination of reasonableness in the context of other searches.

Another indication that a covert search without judicial authorization may be unreasonable is found in The Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA-PATRIOT) Act, Pub.L. No. 107-56, passed by Congress in 2001.  Therein, Congress addressed the professed need of the Executive branch to delay providing notice of searches.  *See* Pub. L. No. 107-56 § 213, *codified at* 18 U.S.C. § 3103a(b).  In doing so, Congress authorized the courts to approve such delays in notice in very prescribed circumstances.  *Id.*  First, the court must find reasonable cause to delay notification. § 3103a(b)(1).  Second, the warrant must prohibit the taking of tangible property unless the court finds reasonable necessity for the seizure. § 3103a(b)(2).  Third, the warrant must provide for notice within a reasonable period of time which can only be extended by the court.  § 3103a(b)(3).  While the constitutionality of this statute has not been determined, it certainly suggests that a covert search is something that requires judicial oversight and is not something that is left to the Executive branch alone to determine.

Finally, Supreme Court precedent suggests that a warrant is needed in order to authorize a covert execution of a search or seizure.  *Dalia*, 441 U.S. at 247 ("Implicit in the decision such as *Silverman* and *Irvine* has been the Court's view that covert entries are constitutional in some circumstances, at least if they are

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 14**

made pursuant to a warrant.").

The seizure in this case needs to be contrasted against the principles discussed above. Unlike a normal seizure by law enforcement, this seizure appeared to be a car theft. Any person seeking information on the theft would reach a dead end. Local authorities were told to deny knowledge of the event if asked. Even during the pendency of the case before this Court, defense attorneys were told that there was no record of such an event in the Deschutes County Sheriff's Office records. No inventory was filed. No judicial determination was made of the need for a covert search. No judicial determination was made of the period of time needed to delay notification. No judicial review of the inventory was made. All of the decisions normally made by the judiciary were made by the officers involved. It is difficult to conclude that the authors of the Fourth Amendment contemplated such discretion be afforded to the Executive branch. *United States v. United States District Court for Eastern Dist. of Mich.*, 407 U.S. 297, 316-17 (1972) (The Fourth Amendment does not contemplate the executive officers of Government as neutral and disinterested magistrates. . . [T]hose charged with this investigative and prosecutorial duty should not be the sole judges of when to utilize constitutionally sensitive means in pursuing their tasks. The historical judgment, which the Fourth Amendment accepts, in that unreviewed executive discretion may yield too readily to pressures to obtain incriminating evidence and overlook potential invasions of privacy and protected speech.").

The very basis of the Fourth Amendment was a distrust of the Executive branch and overreaching searches. *United States v. Berdugo-Urquidez*, 494 U.S. 259 (1990) ("The driving force behind the adoption of the [Fourth] Amendment, as suggested by Madison's advocacy, was widespread hostility among the former colonists to the issuance of writs of assistance empowering revenue officers to search suspected places for smuggled goods, and general search warrants permitting the search of private houses, often to uncover papers that might be used

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 15**

1  to convict persons of libel."). The judiciary was to be the one to determine the

2  need and contour of searches and seizures before the fact. *United States District*

3  *Court,* 407 U.S. at 318. ("Prior review by a neutral and detached magistrate is the

4  time-tested means of effectuating Fourth Amendment rights."). While the

5  automobile exception to the warrant requirement has been created by the courts for

6  practical reasons, it does not contemplate that the rest of the procedures that go into

7  a reasonable search will be left to the discretion of the Executive branch as well.

8         Although not necessarily Constitutionally required, other factors bear into

9  the reasonableness of the search. The automobile exception to the warrant

10  requirement began as a response to exigency. In this case, there was no exigency.

11  The authorities had probable cause to seize the vehicle months before the seizure.

12  They chose to wait to execute the seizure of the vehicle. There was ample time to

13  seek approval for a covert search and seizure under the Patriot Act. Probable cause

14  to search and seize for the transportation of drugs from California to Eastern

15  Washington had been established the day before the search and there was ample

16  time to get a warrant for a covert search. The failure to seek judicial approval of

17  this unusual conduct is relevant to the Court's determination of reasonableness.

18       **(2)     The Use of Force**

19       Normally, a judicially-approved search does not contemplate the use of force

20  not associated with the search itself. In this incidence, the Defendant's car was hit

21  from behind. This striking was not part of the search but was a ploy to hide the

22  search. A seizure becomes unlawful when it is "more intrusive than necessary."

23  *Ganwich v. Knapp*, 319 F.3d 1115, 1122 (9th Cir. 2003). To determine whether the

24  execution of the administrative seizure in this manner was justified, the Court must

25  "balance the nature and quality of the intrusion on the individual's Fourth

26  Amendment interests against the countervailing governmental interests at stake."

27  *San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose*, 402

28  F.3d 962, 975 (9th Cir. 2005). In assessing the reasonableness of the agents'

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 16**

conduct under the Fourth Amendment, an appropriate factor to consider is whether the officers considered alternatives before undertaking intrusive activity implicating constitutional concerns. *Id.* at 977.

Here, a DEA agent intentionally hit Defendant's car from behind.  The agents testified that they merely tapped the car.  Even if this were true, enough force was used so that the tap was felt by Defendant to the extent that it caused him to get out of his car and examine his bumper to see if any damage had occurred. Also, as a result of the staged "theft," Defendant and Ms. Volerio-Perez  became victims of a crime and were subject to the emotional toil that accompanies being a victim of a crime.  The fact that no one received any reported injuries does not justify the intentional infliction of emotional distress caused by being hit by a vehicle and having a car stolen before your very eyes.  In their response, the Government emphasizes that at all times Defendant and Ms. Volerio-Perez were treated as "victims," rather than defendants, implying that the former is more preferable to the later.  The Court cannot agree.  Being a victim of any crime places one in an extremely vulnerable position, without any constitutional protections. The same cannot be said if Defendant had been arrested, or if the car had been administratively seized with proper notification and without inflicting emotional distress on the Defendant and Ms. Volerio-Perez.  The fact that the agents used force to effectuate the administrative seizure is relevant to this Court's determination of reasonableness.

### (3)    The search and seizure of Defendant

The intentional stopping, searching, and detention of people is a crime if committed by private citizens.  It is permissible conduct by law enforcement if done in connection with legitimate activities, such as an arrest.  In this case, as part of the administrative seizure, people were stopped, searched, and detained.  This is not usual in an administrative search.  The Defendant and his passenger were ordered to move the car to a parking lot, to get out of the car, to not get back in the

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 17**

car to retrieve a purse, to leave the keys in the car, and to get in the police vehicle. In such circumstances neither would feel free to leave. While the same conduct is legitimate if the stop is to arrest or search for evidence, it loses its legitimacy when it is done on a pretext. It was not reasonable to delay the administrative search of a car until people were in the car. Such a procedure avoids the Constitutional protections of persons and their personal privacy. Such an invasion of the occupants should not be condoned without judicial review before the event. The search and seizure of Defendant and Ms. Volerio-Perez is relevant to the Court's determination of reasonableness.

### (4)    The Seizure of Private Property Unrelated to the Administrative Seizure of the Vehicle

When the agents "administratively seized" the black Ford Focus, the agents confiscated property from Defendant and Ms. Volerio-Perez that clearly was not forfeited to the Government. There were a number of CDs in the car as well as personal items one would have when taking a trip, including clothing and a backpack. In addition, a camera, a check book with blank checks and a check register were also in the car. Clearly, these items were not subject to forfeiture or seizure. The Government had no statutory right to seize these items. The reality is that by executing the seizure in this manner, the agents stole personal property of Defendant and Ms. Volerio-Perez that they had no right to take.

The fact that the agents stole property of Defendant and Ms. Volerio-Perez when executing the administrative seizure is relevant to a determination of reasonableness.

### (5)    The Reasonableness of the Search and Seizure

In determining the constitutionality of the search and seizure that took place in La Pine, Oregon, the Court engages a two-fold analysis. First, the Court looks at the totality of the circumstances in an effort to determine whether the search and seizure was reasonable. As part of this inquiry, the Court asks whether a magistrate would have authorized, before the fact, the manner in which the seizure

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 18**

was executed.  The constitutionality of covert searches and seizures with or without a warrant has not been determined.  As noted earlier, courts have used Rule 41 of the Federal Rules of Criminal Procedure rather than the Constitution in reviewing such searches.  Even so, the Court is convinced that a covert search and seizure must, at a minimum, be approved in advance by the judiciary by way of the issuance of a warrant.

In looking at the totality of the circumstances, it is helpful to analyze the seizure into the three discrete actions by DEA agents that were discussed above: (i) the controlled buys in September and November, 2004; (ii) the information known as of the morning of December 18, 2004; and (iii) the issuance of the search warrant.

### (i)    Controlled Buy in September, 2004

If the controlled buys provided the statutory authority for the administrative seizure, the Court concludes that the manner in which it was executed was not reasonable.  The controlled buy that resulted in the administrative forfeiture occurred in September, 2004.  At the time of executing the seizure, the agents knew that the persons in the car were not the persons who engaged in the controlled purchase.  There were no exigent circumstances based on the controlled buy, except those created by the DEA agents by waiting until the car was en route, before deciding to execute the warrant.

Based on the September 14, 2004, controlled buy of drugs, the agents could have sought a warrant to search and seize the vehicle authorizing delayed notice under 18 U.S.C. 3101a(b).  Had they done so, a magistrate would find that the manner in which the DEA agents wanted to seize the vehicle unauthorized and unreasonable.  A magistrate would have been notified that the persons presently driving the car were not the individuals involved in the previous controlled buys.  A magistrate would have been told that the event was to be disguised as a theft.  In that instance, seizing the car at that point in time, and in that manner, would be

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 19**

1  akin to stealing a rental car that was used previously in a controlled purchase, but

2  was being driven by an unrelated third-party.  A magistrate would not have found

3  that the USA Patriot Act provisions were met and would not have approved a

4  covert seizure.

5              **(ii)      December 18, 2004**

6       By the morning of December 18, 2004, DEA agents had probable cause to

7  believe that the black Ford Focus was transporting controlled substances.  At that

8  time, they had probable cause to stop, detain, and arrest Defendant, and

9  administratively seize the vehicle.  This did not happen.  Instead, the totality of the

10  circumstances—the use of force to stop the vehicle, the phony high speed chase,

11  the search of the individuals under false pretenses, the seizure of unrelated

12  property, the obliteration of any record of the event, and the other events involved

13  in the incident—created an unreasonable search and seizure.

14       If, on the morning of December 18, 2004, DEA agents had submitted an

15  application for a 18 U.S.C. § 3103a(b) warrant application to search and seize the

16  vehicle based on intercepted conversations, a magistrate may have found that

17  delaying notice of the seizure was justified.  The DEA agents may have shown to a

18  magistrate's satisfaction that the on-going investigation would be jeopardized if

19  notice was given.  Even so, a magistrate would not have approved the execution of

20  the warrant in the manner in which it was done.  The above-listed tactics were

21  unreasonable and were not authorized by the USA Patriot Act—only the delay in

22  providing notice was authorized by the USA Patriot Act.  The remainder of the

23  activities were not authorized by statute or case law.  A reviewing court would

24  have found the manner of execution of the warrant to be unreasonable.

25              **(iii)     The Spokane Search Based on the Warrant**

26       After driving the car to Spokane, DEA agents obtained a search warrant

27  from the magistrate.  The Court has already concluded that the agents acted

28  unlawfully in seizing the car in the manner described.  The question then becomes,

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS** ~ 20

1  can the agents remove the taint of their unlawful actions by seeking a warrant that

2  does not disclose the unlawful conduct.  The Affidavit in Support of the Search

3  Warrant was silent regarding the previous controlled buys that took place in the

4  black Ford Focus.  It was silent about the manner in which the vehicle was

5  "seized."  If the DEA agents had included the details of how the search was

6  executed, a magistrate would not have approved the search warrant.  It would have

7  been clear to a magistrate that the execution of the seizure was done in an

8  unreasonable manner, and a magistrate would refuse to give judicial approval of

9  such conduct.

10      Of course, the agents did not need to obtain a search warrant from the

11  magistrate before they searched the black Ford Focus.  *United States v. Johnson*,

12  572 F.2d 227, 232 (9th Cir. 1978).  Indeed, in its briefing, the Government stresses

13  the fact that it was not necessary for the DEA agents to obtain the warrant, and

14  argues that the obtaining of the warrant adds support for the subsequent search of

15  the vehicle.  The Government's argument misses the point.  Instead, the crucial

16  issue is *why* the agents sought a search warrant after administratively seizing the

17  car.  The logical conclusion is that they must have had serious reservations

18  regarding the manner in which they "administratively seized" the car and sought

19  the magistrate's stamp of approval of the process in order to legitimize the

20  subsequent search.

21      The question the Court must answer, then, is whether the obtaining of the

22  search warrant in any way washes away the taint of the illegal seizure.  The

23  Government would have had more support for its arguments if the DEA agents

24  were forthright with the magistrate regarding the manner in which the Ford Focus

25  was administratively seized.  Again, the failure to inform the magistrate regarding

26  the seizure leads to the logical conclusion that the agents did not want the

27  magistrate to know how the Ford Focus was seized.  The Court is convinced that

28  had the magistrate been informed of the manner in which the vehicle was seized,

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 21**

1  the magistrate would not have issued the search warrant, because the seizure of the

2  Ford Focus was executed in an unreasonable manner.  Moreover, had a warrant

3  been issued to search the car by a magistrate who had full knowledge of the

4  manner in which the car was seized, the Court concludes that the evidence still

5  could not be used in a subsequent prosecution because of the prior unreasonable

6  seizure.

7      Because the administrative seizure of the Ford Focus was unreasonable and

8  violated the Fourth Amendment, any search adjunct to the seizure would also be

9  unreasonable.  *Wong Sun v. United States*, 371 U.S. 471, 484 (1963).  The

10  obtaining of the search warrant does not wash away the unreasonableness of the

11  illegal seizure.

12  **D**.  **Exclusionary Rule**

13      As discussed above, if the Ford Focus was validly seized for forfeiture, the

14  agents could have conducted a warrantless search of the vehicle as incident to the

15  administrative seizure and no search warrant would be necessary.  *Johnson*, 572

16  F.2d at 232.  This only begs the question, however, as to whether agents can

17  conduct a warrantless search or a search authorized by a warrant, if the vehicle was

18  *not* validly seized for forfeiture.

19      Generally, under the exclusionary rule, evidence obtained in violation of the

20  Fourth Amendment may not be used in criminal proceedings against the victim of

21  the illegal search and seizure.  *Illinois v. Krull*, 480 U.S. 340 (1987).  The "prime

22  purpose" of the exclusionary rule "is to deter future unlawful police conduct and

23  thereby effectuate the guarantee of the Fourth Amendment against unreasonable

24  searches and seizures."  *Id.* (Citations omitted).  Evidence seized both directly or

25  indirectly in violation of the Constitution must be excluded.  *Wong Sun*, 371 U.S.

26  at 484 (holding that statements obtained that are the result of unlawful entry is the

27  "fruit" of official illegality and subject to exclusion).

28      The Ninth Circuit has set forth three factors the Court should consider in

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 22**

1  determining whether the exclusionary rule should apply in a particular case:  (1)

2  whether suppression would affect the group conduct that the exclusionary rule was

3  designed to punish, *i.e.*, police misconduct; (2) the source of the error in the

4  particular case and whether any evidence suggested that the source, *e.g.*, issuing

5  magistrates, was inclined to ignore or subvert the Fourth Amendment; and (3) the

6  basis for believing the exclusion of evidence will have a significant deterrent effect

7  upon the source of the error.  *United States v. Sears*, 411 F.3d 1124, 1129 (9th Cir.

8  2005).  Suppression is not appropriate if "the incremental deterrent value would be

9  minimal."  *Id.* (quoting *New York v. Harris*, 495 U.S. 14, 20 (1990)).

10      Applying these factors to the facts in this case, the Court concludes that

11  suppression of the evidence obtained as a result of the unlawful search and seizure

12  is the proper remedy.  Suppression of the evidence will directly affect DEA, which

13  is the group that is responsible for the misconduct.  The source of the error was  the

14  DEA agents themselves, and was not the magistrate.  Finally, the need to deter

15  future unlawful police conduct is strong.  Covert warrantless seizures of

16  administratively forfeited property are potentially dangerous and problematic.

17  Without some process, the danger of the overreaching feared by the drafters of the

18  Fourth Amendment is real as is demonstrated here.   This need "outweighs the

19  costs of withholding reliable information from the truth-seeking process." *Krull*,

20  480 U.S. at 348-49.  The Court is convinced that suppression in this instance will

21  have a significant deterrent effect upon the DEA agents and the manner in which

22  they administratively seize property.

23      The fact that Sergeant Short contacted Mr. Gunnels and discussed some of

24  the details of the anticipated seizure does not trigger the good faith exception to the

25  exclusionary rule.  In *United States v. Winsor*, 846 F.2d 1569 (9th Cir. 1988), the

26  Ninth Circuit rejected the Government's argument that the fruits of a warrentless

27  search should be admissible evidence because the police conducted the search in

28  good faith.  *Id*. at 1579.  Moreover, Gunnels was not asked to authorize the plan.

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS** ~ 23

Suppression of the evidence obtained as a result of the covert warrentless seizure of the black Ford Focus meets the purpose of the exclusionary rule and is appropriate in this case.

**E.    Outrageous Conduct**

A district court may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation. *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991). If the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss an indictment under its supervisory powers. *Id.* These powers may be exercised for three reasons: to remedy a constitutional or statutory violation; to protect judicial integrity by insuring that a conviction rests on appropriate considerations validly before a jury; or to deter future illegal conduct. *Id.* Dismissal is appropriate when the investigatory or prosecutorial process has violated a federal constitutional or statutory right and no lesser remedial action is available. *Id.* For example, a Fourth Amendment violation may properly result in dismissal if the violation is not adequately remedied by application of the exclusionary rule. *Id.*

To violate due process, governmental conduct must be "so grossly shocking and so outrageous as to violate the universal sense of justice." *Barrera-Moreno*, 951 F.2d at 1092. In this case, law enforcement intentionally caused an accident and stole a car, along with Defendant's and Ms. Volerio-Perez's personal effects – all to effectuate an administrative seizure that could have been done with flashing lights and sirens. In reading the facts of this case, one cannot help but be shocked and outraged by the manner in which the DEA agents chose to effectuate an administrative seizure.

The brain teaser in all of this is that the agents could have done much that they did under the color of federal law. Clearly, they could have pulled Defendant over, arrested him, searched the car incident to arrest, and administratively seized the car at the same time. No constitutional violations would have occurred if the

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 24**

1  agents would have provided some process for doing all those things.  Because the

2  agents chose to act outside the proscriptions of the law, however, their conduct is

3  shocking and outrageous to the point that it violates the universal sense of justice.

4       Here, the exclusionary rule will adequately remedy the constitutional

5  violations.  Thus, dismissal under the supervisory power is not appropriate.  Nor is

6  dismissal of the Indictment proper for the due process violations.  The Indictment

7  is not based on just the facts surrounding the seizure of the Ford Focus.  The illegal

8  search and seizure did not taint the remaining legitimate Government conduct in

9  securing the Indictment.  *United States v. Montoya*, 45 F.3d 1286, 1300 (9th Cir.

10  2005) ("Outrageous government conduct is not a defense, but rather a claim that

11  government conduct in securing an indictment was so shocking to due process

12  values that the indictment must be dismissed.")

13 **F.    Illegal Seizure**

14       Defendant argues that he was illegally seized as a result of the DEA actions

15  as described above. The Court agrees.  However, no further relief is requested

16  because of this seizure other than the suppression of the evidence in the car which

17  the Court has already addressed.  No further remedy is necessary.

18       Accordingly, **IT IS HEREBY ORDERED:**

19       1.    Defendant's Motion to Dismiss or Suppress (Ct. Rec. 616) is

20  **GRANTED**, in part.

21       2.    Defendant's Motion for Evidentiary Hearing (Ct. Rec. 648) is

22  **GRANTED**.

23       3.    Defendant's Motion to Dismiss (Ct. Rec. 698) is **DENIED**.

24       4.    Defendant's Motion to Suppress Evidence (Ct. Rec. 699) is

25  **GRANTED**.

26       5.    Defendant's *Ex parte* Motion to Seal the Exhibits Attached to the

27  Motion for Dismisal [sic] or Suppression (Ct. Rec. 639) is **GRANTED**.

28       6.     Defendant's Motion for Interpreter Services (Ct. Rec. 694) is

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 25**

1  **DENIED, as moot.**

2       7.      On March 23, 2006, the Court struck the trial date (Ct. Rec. 738).  A

3  new trial date is **set** for **May 30, 2006**, at **9:00 a.m.**, in Spokane, Washington.

4  Counsel shall meet in chambers at **8:30 a.m.**, on the first day of trial.

5       8.      A pretrial hearing is set for **May 15, 2006**, at **10:00 a.m.**, in Spokane,

6  Washington.

7       9.      Pursuant to 18 U.S.C. § 3161(h)(1)(F), the time between January 26,

8  2006, the date the motion to suppress was filed, until the date this order is entered,

9  is **DECLARED EXCLUDABLE** for purposes of computing time under the

10  Speedy Trial Act.

11       **IT IS SO ORDERED.**  The District Court Executive is directed to enter this

12  order and to provide copies to counsel.

13       **DATED** the 20th day of April, 2006.

14

15

16                    *s/ Robert H. Whaley*

                    ROBERT H. WHALEY
17                 Chief United States District Judge

18

19  Q:\CRIMINAL\2005\05-126\Alverez-Tejada\suppress.ord5.wpd

20

21

22

23

24

25

26

27

28

**ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS ~ 26**